# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR SIFUENTES, | 1:08-cv-01537-LJO-DLB (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| MATTHEW CATES, | [Doc. 1] |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following a 1984 conviction in the Fresno County Superior Court for one count of first degree murder with an enhancement for use of a firearm. Petitioner was sentenced to 27-years- to-life. (See Petition, p. 2, ¶¶ 3-4; Exhibit A, California State Department of Justice Criminal History Transcript.)

In the instant petition Petitioner does not challenge the validity of the judgment; rather, he challenges the Board of Parole Hearings' ("Board") 2007 decision finding him unsuitable for parole.

On or about January 25, 2008, Petitioner filed a state petition for writ of habeas corpus in the Fresno County Superior Court. The petition was denied in a reasoned opinion on February 5,

1

2008.  (Exhibit G, to Petition.)

On or about February 25, 2008, Petitioner filed a state petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District.  The petition was summarily denied on May 30, 2008.  (Exhibit H, to Petition.)

Petitioner then filed a petition for review in the California Supreme Court, which was summarily denied on August 13, 2008.  (Exhibit I, to Petition.)

Petitioner filed the instant federal petition for writ of habeas corpus on October 14, 2008.  Respondent filed an answer to the petition on January 20, 2009. (Court Doc. 11.)  Petitioner did not file a traverse.

## STATEMENT OF FACTS[1]

> On the day before the murder, [Petitioner] had been drinking.  Rosa Vasquez and Veronica Sanchez, . . . were living at 1519 East McKenzie . . . Avenue in Fresno.  On October 5, 1983, [Petitioner] went to the residence of Rosa Vasquez, at approximately 2:00 a.m.  He was in search of the victim, Gloria Sifuentes, who he had maintained a common law relationship with for approximately 11 years.  They had two children by this relationship and had been separated for several months.  On the morning of the murder, [Petitioner] walked uninvited into the Vasquez home carrying a rifle, while Rosa Vasquez and a guest, Manuel Fabela, . . . were in the living room watching television. [Petitioner] asked them where he could find the victim, Rosa Vasquez took him to the back bedroom where the victim was sleeping.  The victim Gloria Sifuentes was sharing a bed with Veronica Sanchez and Veronica's two-year-old daughter.  The victim had been drinking heavily that evening. [Petitioner] approached the victim, slapped her in the face, and ordered her to go with him or be killed.  This command was repeated several times before the victim got out of bed.  At one point [Petitioner] told the victim that he would go to prison but he would kill her anyway.  Veronica Sanchez heard [Petitioner] remind the victim that he would kill her if he ever found her with another man. [Petitioner] shot the victim, the bullet penetrated her arm and stomach.  The victim tried to get up, Rosa Vasquez wrapped a blanket around the victim in an attempt to help her. [Petitioner] again told the victim to leave with him or he would kill her. [Petitioner] pointed the rifle at the victim's head, Rosa Vasquez pushed the rifle away from the victim's head and attempted to reason with [Petitioner], but he threatened her.  Rosa Vasquez left the room in order to call for help. [Petitioner] then shot the victim in the chest.  He then shot her a third time at point blank range in the victim's ear.  When the shooting was over, [Petitioner] threatened to shoot Rosa Vasquez if she did not hang up the telephone.  When she continued to hold the telephone up to her ear, [Petitioner] fired a shot, which hit the wall close to Rosa's head.  At that point [Petitioner] left the scene of the crime and was subsequently arrested by local law enforcement officers.

(Exhibit F, to Petition, at 9-12.)

---

[1] These facts are taken verbatim from the transcript of the 2007 hearing.  (Exhibit F.)

# DISCUSSION

## I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of

5

Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Petition, Exhibit F.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (Aug. 21, 2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in

> the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

At the 2007 parole hearing, the Board relied primarily on the circumstances of Petitioner's commitment offense finding it was carried out in a dispassionate and calculated manner and multiple victims were attacked. (Exhibit E, to Petition, at 28-29.) "The motive for the crime is either the issue of jealousy or a demonstration of your power over the victim." (Id. at 29.)

With regard to the circumstances of the commitment offense, the Board found that it was carried out in a dispassionate and calculated manner demonstrating a callous disregard for human suffering.[3] This finding is supported by "some evidence" demonstrating that Petitioner continues to remain a threat to public safety. Petitioner went to the residence where his estranged common law wife was residing with a loaded .22 caliber rifle shotgun. He approached the victim in the bedroom, slapped her in the face, and repeatedly ordered her to go with him or he would kill her. He then shot the victim in the arm and stomach. The first shot did not kill her, and she tried to get up and Rosa Vasquez wrapped a blanket around her. Petitioner then ordered her to leave with him, pointed the gun at her head, and Rosa Vasquez pushed it away and attempted to reason with

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

him, but he threatened her.  Rosa then left the room to seek assistance and Petitioner then shot the victim once in the chest and again at point blank range in the ear.  He then proceeded to threaten to shoot Rosa Vasquez if she did not hung up the phone and fired a shot at her, which hit the wall close to her head.  During the entire incident there was a small child in the room. These circumstances clearly support the finding that Petitioner carried out the offense in disregard for the human suffering of the intended victim and callous disregard for the second victim who attempted to seek assistance.

In Lawrence, court concluded that the sole reliance on the circumstances of the commitment offense to deny parole was not supported by "some evidence" in the record because the offense took place 36 years prior and "all the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety."  Id. at 1226-1227.  Unlike Lawrence, at the time of the 2007 hearing, Petitioner had been incarcerated for just over 23 years, on a 27 years to life sentence.[4]

The Board also noted that at the time of the commitment offense, Petitioner was suffering from alcohol abuse and was under the influence at the time of the commitment offense.  (Exhibit E, to Petition, at 30.)  He had a prior conviction for driving under the influence for which he served jail time and was on probation at the time of the commitment offense.  (Id. at 29.)  The Board noted a recommendation by "the previous panel to begin to attempt to identify any substance abuse treatment facilities that would be in close proximity to where you plan to parole."  (Id. at 30.)  There is no evidence in the record to substantiate that Petitioner attempted to do so.  Thus, the evidence before the Board in this instance demonstrates that in addition to the circumstances of the commitment offense, Petitioner has not taken adequate steps to address his

---

[4] In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), citing Biggs, 334 F.3d at 916. Nevertheless, as in this case, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence. Therefore, the due process concerns noted in Biggs and Irons are not at issue in this case.

8

1   alcohol abuse problem which was a contributing factor in the offense.  Given that alcohol/drugs
2   played a significant role in the commitment offense, there is "some evidence" to support the
3   Board's legitimate concern that his prior alcohol abuse continues to render him a danger to public
4   safety if released.  15 Cal. Code Regs. § 2402(b) (Board may consider all relevant information
5   including past and present mental state).  Consequently, although the Board relied largely on the
6   circumstances of Petitioner's commitment offense in denying parole, the Court finds that in this
7   case, some evidence supports the Board's finding given his mental state at the time of the
8   hearing.  See In re Lawrence, 44 Cal.4th at 1214.

9       Although the Board noted that Petitioner had suffered one serious rules violation in 1993
10  for failure to report to assignment and three counseling chronos, the last in 1999 for failure to
11  report to work, it commended Petitioner for not having suffered a serious rules violation in
12  fourteen years.  Thus, it does not appear that this factor contributed to the Board's denial.

13      Pursuant to section 2402(d), the Board also considered the positive factors and
14  commended Petitioner for his participation in church activities, AA and NA, and having not
15  received a rules violation report since 1993.  (Id. at 30.)  The Board also noted that the
16  psychological evaluation was generally favorable.  (Id.)   However, on balance the positive
17  aspects did not outweigh the factors of unsuitability.  The Board recommended that Petitioner
18  upgrade vocationally and continue to participate in any available self-help programs.  (Id. at 31.)

19      Petitioner contends that the Board's 2007 decision violated the Equal Protection Clause
20  because there is an over-restrictive policy to deny parole to approximately 95 to 99 percent of all
21  life inmates. (Petition, at 18-19.)  Petitioner's claim is without merit.  However, the Board is
22  guided by the factors outlined in section 2402 of the California Code of Regulations, Title 15 and
23  makes an individualized assessment based on the unique circumstances of each case.  Moreover,
24  because the preferential treatment alleged in this claim is neither based on a suspect classification
25  nor impinges on constitutionally protected rights, it must merely withstand rational basis review.
26  City of Cliburn, Tex. v. Cliburn Living Ctr., 473 U.S. 432, 440 (1985). As discussed above, the
27  Board's decision is founded on a rational basis. See also McGinnis v. Royster, 410 U.S. 263, 270
28  (1973) (Supreme Court stated that legislative classifications and groupings created to enable the

determination of an optimal time for parole eligibility require only some rational basis to sustain them.). Therefore, this claim is also without merit.

The Board's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 5, 2009**            **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE